**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROCIO HERRERA-NEVAREZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 3930** |
| | ) | |
| **ETHICON, INC. and JOHNSON & JOHNSON,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Rocio Herrera-Nevarez (Herrera) has sued Ethicon, Inc. and Johnson &

Johnson, alleging that she was injured from her use of a medical device they

manufactured.  Defendants have moved for summary judgment on the ground that

Herrera is judicially estopped from bringing this suit because she failed to disclose it

during her 2011 bankruptcy proceedings.  For the reasons stated below, the Court

denies the motion.

**Background**

In 2005, Herrera was surgically implanted with a Gynecare TVT Obturator

System device—manufactured by Ethicon—to treat stress urinary incontinence.  In

October 2008, the FDA issued a public health warning noting that products such as the

one implanted in Herrera were associated with serious complications.  It is not clear

whether Herrera was aware of this warning.  Between December 2009 and October

2011, Herrera began visiting her gynecologist to receive treatment for various

gynecological and genitourinary symptoms such as painful sexual intercourse, pelvic pain, and urinary problems. Herrera's gynecologist never told her that her problems may be caused by the Gynecare TVT device.

In March 2011, Herrera filed a Chapter 7 petition for bankruptcy. She did not disclose any potential products liability claim against Ethicon or Johnson & Johnson in her schedule B list of personal property. In July 2011, the bankruptcy court granted discharge of Herrera's debts in the amount of $164,021. *See In re Rocio Herrera-Nevarez*, No. 11 B 10270 (N.D. Ill.), dkt. no. 14; Defs.' Statement of Undisputed Material Facts (SUMF), Ex. C.

In October 2011, Herrera saw a television ad discussing safety problems associated with devices like the Gynecare TVT device. She then contacted the firm of her present counsel, Elise Waisbren, to discuss the possibility of bringing a claim against the device manufacturers. In March 2012, Herrera filed a complaint in this district against Ethicon in which she alleges that she has suffered from mental and physical pain, disability, and permanent injury as a result of the device. The complaint includes claims of negligence, strict liability, and breach of express and implied warranties. In April 2012, Herrera's case was transferred to the Southern District of West Virginia as part of multi-district litigation (MDL) proceedings against Ethicon coordinated out of that district. While the case was pending in that district, Herrera filed an amended complaint in which she added Johnson & Johnson as a defendant.

Herrera's case proceeded through discovery and other pre-trial proceedings as part of the MDL. In March 2016, defendants moved for summary judgment on some claims, arguing that Herrera could not establish certain elements of these claims. *See*

dkt. no. 102. Defendants did not raise the issue of judicial estoppel.

Around June 2016, while the summary judgment motions were pending, Herrera notified the United States Trustee of her suit against defendants. On June 30, 2016, the United States Trustee moved to re-open Herrera's 2011 bankruptcy case and to appoint a new trustee. *See* Pl.'s Resp. in Opp'n to Defs.' Mot for Summ. J. and Statement of Additional Facts (Pl.'s Resp. & SAF), Ex. L. The bankruptcy court appointed Thomas Springer to act as trustee. *See id.*, Ex. N. On July 27, 2016, Herrera filed an amended schedule B form listing her personal property which included her interest in this personal injury lawsuit valued "in excess of $30,000." *Id.*, Ex. O at 3. Springer later filed a motion to employ Waisbren as special counsel to the trustee in order to pursue Herrera's lawsuit for the benefit of the estate. *See id.*, Ex. P. The motion stated that "Waisbren and her firm do not have any connection with [Herrera] (prior to the above referenced pre-petition retention)." *Id.* ¶ 6.

In January 2017, the judge presiding over the MDL granted summary judgment in favor of defendants on some of Herrera's claims. *See* dkt. no. 149. In February 2017, the court remanded the case to this district for trial on Herrera's remaining claims. In May 2017, defendants filed a motion for leave to file another motion for summary judgment based on judicial estoppel. After a brief initial conference concerning defendants' motion, Herrera filed a motion to substitute Springer in his capacity as trustee as the real party in interest in this case. *See* dkt. no. 175.

The Court granted both Herrera's motion to substitute and defendants' motion for leave to file another motion for summary judgment. The Court also ordered Springer to produce any documentation relating to his statement in the motion to appoint special

counsel that Herrera had retained Waisbren "pre-petition" and ordered Waisbren to produce documentation regarding when Herrera first contacted her.

## Discussion

Defendants have moved for summary judgment on all of Herrera's remaining claims. They contend primarily that Herrera is judicially estopped from asserting her personal injury claim because she failed to disclose this claim as an asset before she received a discharge of her debts in July 2011. Defendants also argue that the Court should not permit Herrera to substitute the trustee as the real party in interest on the basis of undue delay. The Court overruled the latter argument when it granted the motion to substitute, concluding that the motion to substitute had been made within a reasonable time and that any delay had not prejudiced defendants in any way. The present ruling focuses solely on judicial estoppel.

When considering a motion for summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all inferences in her favor. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**A.     Judicial estoppel**

Under the doctrine of judicial estoppel, a debtor who receives a discharge in bankruptcy by representing that he does not possess any valuable legal claims "cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006). This doctrine prevents litigants "from manipulating the judicial system by prevailing in different cases . . . by

4

adopting inconsistent positions." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th

Cir. 2014). Permitting a debtor to benefit from concealing assets that could have been

used to pay down debts discharged by the bankruptcy court would be a "perversion of

the judicial process." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). The

doctrine does not apply, however, to innocent omissions. *See Metrou v. M.A.*

*Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015); *Spaine*, 756 F.3d at 547 (considering

whether evidence compels an inference of deceit by the debtor).

In addition, the Seventh Circuit has made it clear that immediate dismissal is not

the proper course in this situation. Rather, the approach it contemplates is the one

Herrera and her counsel followed here: notifying the bankruptcy trustee, who may then

reopen the bankruptcy and move to replace the debtor as the plaintiff in the tort suit.

*See Metrou*, 781 F.3d at 358. This is consistent with the goal, voiced on several

occasions by the Seventh Circuit, to avoid penalizing the debtor-plaintiff's creditors, who

may benefit from a recovery in the tort suit and would be victimized by automatic

dismissal. *See id.* at 359; *see also, e.g., Cannon-Stokes*, 453 F.3d at 448; *Biesek*, 440

F.3d at 413.

Herrera concedes that she did not disclose her personal injury claim against

defendants in her schedule of assets. Pl.'s Resp. & SAF ¶ 4. She maintains, however,

that she acted in good faith because she did not become aware of her potential claim

until October 2011, three months after she received a discharge of her debts. *See id.* ¶

5. Defendants contend that Herrera knew of the claim prior to October 2011, based in

part on Springer's statement to the bankruptcy court that Herrera retained Waisbren

"pre-petition." *See* Defs.' Mem. in Supp. of their Mot. for Summ. J at 3–4. Defendants

also argue that, even if Herrera is correct, the fact that she waited almost five years after October 2011 to re-open her bankruptcy case demonstrates that she intended to profit from her error. *See id.* at 9.

Whether Herrera intentionally omitted this claim from her disclosures is irrelevant to the issue of judicial estoppel, because this suit is now being pursued by the bankruptcy trustee. Judicial estoppel does not apply to claims omitted from bankruptcy disclosures that are later brought by the trustee for the benefit of the bankruptcy estate. *See Biesek*, 440 F.3d at 413. Because Springer has been substituted as the party in interest, Herrera's creditors are the ones who will receive the benefit, or at least the primary benefit, of any award in the present lawsuit. *See id.* There is no justification for using the doctrine of judicial estoppel to deprive creditors of this award, given that the creditors did not allegedly omit the claim from the schedule of assets. The rationale of judicial estoppel—to prevent litigants from benefitting from adopting inconsistent positions—does not apply where, as here, the bankruptcy estate is the one pursuing the claim on behalf of the creditors. Therefore Springer's litigation of this claim is not barred by judicial estoppel, regardless of whether Herrera intentionally omitted the claim from her disclosures.

Defendants also argue that, even if the Court permits Herrera's claim to proceed, it should prevent her from benefitting personally from any award. Defendants allege that, although the bankruptcy court discharged over $160,000 in debt in the original bankruptcy case, creditors have only filed approximately $10,000 worth of claims since the case has been reopened and the deadline for filing additional claims has passed. *See* Defs.' SUMF ¶ 20. Herrera estimates the value of this lawsuit at over $30,000.

defendants are concerned that any surplus remaining after the bankruptcy estate settles the creditors' claims will be awarded to Herrera. In their motion for summary judgment, defendants seek to reserve the right to file a motion requesting an order that any surplus be returned to defendants. *See* Defs.' Mem. in Supp. of their Mot. for Summ. J. at 12 n.10.

The Court will not enter such an order. In so ruling, the Court is guided primarily by the Seventh Circuit's ruling in *Metrou*. There, the district court permitted the debtor to substitute the trustee of his re-opened bankruptcy case as the real party in interest in a claim omitted from his disclosures. *Metrou*, 781 F.3d at 358. The district court then ruled that the trustee's recovery could not exceed the value of the unpaid debts so as to prevent the debtor from benefitting personally. *Id*. In reversing this ruling, the Seventh Circuit said that misconduct by the debtor should not impact the trustee's ability to recover on behalf of the creditors, because it would penalize otherwise innocent parties. *Id*. at 360. The court further said that a categorical rule preventing recovery by the debtor after the debts have been paid is inappropriate, given that the debtor has already turned the claim over to the bankruptcy estate. Instead, whether the debtor is entitled to any potential surplus depends on whether she acted in good faith when she omitted the claim and later re-opened her bankruptcy case. *Id*. The court then indicated that this question is more appropriately determined by the bankruptcy court, to be addressed if and when the trustee prevails in the suit and a surplus remains after paying the creditors. *Id*. Thus "[if it turns out that [Herrera] was trying to deceive [her] creditors, the bankruptcy judge may decide to give the creditors a bonus, or perhaps to return any excess to the defendants in this tort suit." *Id*. It is therefore unnecessary (and

premature) for this Court to determine whether Herrera's conduct prevents her recovery of any hypothetical surplus.

In their reply, defendants argue attempt unsuccessfully to distinguish *Metrou*. They contend that the only reason the district court in that case did not rule on the debtor's intent to deceive is that it chose instead to devise a categorical rule. Defendants seem to imply that, had the district court known it could not create a categorical rule, it would have—and could have—resolved the issue of intent itself. Defs.' Reply in Supp. of their Mot. for Summ. J. at 6. But this Court's decision to leave the question to the bankruptcy judge does not depend on the conduct of the district court in *Metrou*. Rather, it depends on the Seventh Circuit's clear statements that the issue of the debtor's intent is irrelevant in determining whether the trustee can pursue the claim and that the issue is best determined by the bankruptcy court.

For these reasons, the Court denies defendants' motion for summary judgment. To the extent that Herrera's intent is relevant to the division of any potential award, the bankruptcy judge overseeing the estate can address this issue.

## B.    Sanctions

In Herrera's response to defendants' motion, she asks the Court to impose sanctions on defense counsel for failure to make an objectively reasonable investigation into one of defendants' claims. Pl.'s Mem. in Supp. of Resp. in Opp'n to Defs.' Mot. for Summ. J. (Pl.'s Resp.) at 7–9. Defendants have focused a substantial portion of their argument that Herrera deceived the bankruptcy court on the statement made by Springer that Herrera hired counsel in this case "pre-petition" and thus was well aware of her potential claim before filing for bankruptcy and before receiving a discharge of her

debts.  Herrera argues that defendants need only have called Waisbren to find out that she hired counsel three months *after* he obtained a discharge.  Waisbren takes issue with defense counsel's statement that she intentionally and strategically counseled Herrera to omit the tort claim from her bankruptcy disclosures; she seeks sanctions to compensate for the time she has spent addressing these allegations.  *See id.* at 8–9.

Federal Rule of Civil Procedure 11 permits a court to impose appropriate sanctions on any counsel or party who fails to make reasonable inquiry into the factual contentions they make in court filings.  *See* Fed. R. Civ. P. 11(b)(3), (c)(1); *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001).

The Court finds that Springer's statement that Waisbren was retained before the bankruptcy petition was filed was erroneous.  Springer has stated in an affidavit that the parenthetical reference in the motion to appoint special counsel was "nothing more than a scrivener's error."  Defs.' Reply in Supp. of their Mot. for Summ. J., Ex. M at 3.  He reached this conclusion after contacting Waisbren and receiving Herrera's retainer agreement dated October 1, 2011.  *Id.*  Waisbren also provided the Court with an unredacted copy of the retainer agreement containing that date.  Herrera has demonstrated that not only did she retain Waisbren after her bankruptcy petition was filed, but also after her discharge.

Despite the fact that the question of when Waisbren was retained was easily determined, sanctions are not warranted in this case.  Although defense counsel could have and should have acted with greater diligence before seeking to file defendants' additional summary judgment motion, his argument for filing the motion was not without factual basis.  Counsel relied on Springer's statement to the bankruptcy court to the

9

effect that Herrera had retained counsel for the present claim "pre-petition." Although Springer and Waisbren later produced documents showing that Herrera did not retain Waisbren pre-petition but rather retained her in October 2011, after the bankruptcy court's discharge order, defense counsel did not have these documents before asking to move for summary judgment. The Court denies Herrera's request for sanctions.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion for summary judgment [dkt. no. 179]. The Court also denies Herrera's request for sanctions.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 15, 2017